**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| Intake Breathing Technology, LLC, | |
| Plaintiff, | C.A. No. 9:26-cv-80728 |
| v. | |
| Zendrop LLC and Consumer Product Innovations, Inc. | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Intake Breathing Technology, LLC ("Plaintiff"), by and through its undersigned counsel, brings this action for direct and indirect patent infringement under 35 U.S.C. § 271, copyright infringement under 17 U.S.C. § 501 *et seq.*, trade dress infringement, trademark infringement, and false designation of origin and unfair competition against Zendrop LLC and Consumer Product Innovations, Inc. (collectively "Defendants" or "Zendrop"), and alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for (i) direct and indirect patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. §§ 101 *et seq.*, including infringement under 35 U.S.C. § 271(a), inducement of infringement under 35 U.S.C. § 271(b), and contributory infringement under 35 U.S.C. § 271(c); (ii) copyright infringement under 17 U.S.C. § 501 *et seq.*; (iii) common law trade dress infringement; (iv) trademark infringement under 15 U.S.C. § 1114; and (v) false designation of origin and unfair competition, 15 U.S.C. § 1125, *et seq.* By this action, Plaintiff seeks to prevent Defendants from infringing Plaintiff's intellectual property rights, inducing and contributing to the infringement of Plaintiff's intellectual property rights by third

1

parties, causing confusion in the marketplace, and unfairly benefiting from Plaintiff's reputation and goodwill.

2.      Plaintiff seeks (i) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining Defendants from directly and indirectly infringing Plaintiff's U.S. Patent Nos. 9,510,969 (the "'969 Patent"), 10,556,095 (the "'095 Patent"), and 10,675,174 (the "'174 Patent") (collectively, the "Asserted Patents") and damages, expenses, and attorneys' fees arising from Defendants' willful infringement of the Asserted Patents; (ii) monetary damages and equitable relief for Defendants' infringement of Plaintiff's copyrights; and (iii) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining Defendants from using Plaintiff's common law trade dress and Plaintiff's trademarks and unfairly competing with Plaintiff in connection with the distribution, advertising, promotion, offering for sale, facilitation of sale, and/or sale of Defendants' goods.

## THE PARTIES

3.      Plaintiff, Intake Breathing Technology, LLC ("Plaintiff" or "Intake") is a California limited liability company with its principal place of business at 614 Santa Barbara Street, Ste. A, Santa Barbara, CA 93101, and is the owner of all rights asserted in this action.

4.      On information and belief, Defendant Zendrop LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 1401 Forum Way, Suite 500, West Palm Beach, Florida 33401.  Zendrop LLC is registered to transact business in the State of Florida as a foreign limited liability company.

5.      On information and belief, Defendant Consumer Product Innovations, Inc. ("CPI") is a domestic corporation registered in Delaware with its principal place of business located at

5499 N. Federal Highway, Boca Raton, Florida 33487 (collectively with Zendrop LLC, "Defendants").

6. On information and belief, Defendants jointly own and operate the Zendrop e-commerce drop shipping platform (accessible at www.zendrop.com and app.zendrop.com), through which they advertise, promote, offer for sale, sell, distribute, import, and/or facilitate and/or encourage sales, advertising, promotion, importation and/or distribution of the infringing magnetic nasal strip products and component parts that are essentially identical to Plaintiff's INTAKE® nasal dilator system and its component parts (the "Accused Products"). The Accused Products include, without limitation, the infringing magnetic nasal strip products, systems, and component parts listed on the Zendrop platform at the URLs identified herein.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*., the trademark laws of the United States, 15 U.S.C. §§ 1051 *et seq*, and the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq*.

8. The Court has supplemental jurisdiction over Plaintiff's common law trade dress infringement claim pursuant to 28 U.S.C. § 1367(a).

9. This Court has personal jurisdiction over Defendants because, among other reasons and upon information and belief, Defendant Zendrop LLC is registered to transact business in the State of Florida as a foreign limited liability company and maintains its principal place of business at 1401 Forum Way, Suite 500, West Palm Beach, Florida 33401, which is within this District. Defendant CPI has a principal place of business at 5499 N. Federal Highway, Boca Raton, Florida 33487, which is within this District. Defendants have committed acts of patent infringement, copyright infringement, trademark infringement, and trade dress infringement in this District,

3

including at least through selling, advertising, promoting, offering for sale, distributing, importing, and/or facilitating and/or encouraging sales, advertising, promotion, importation, and/or distribution of the Accused Products in or into this District through their Zendrop platform. Defendants conduct substantial, systemic, and continuous business activities within this District, have purposefully availed themselves of the privilege of doing business in the State of Florida, and have purposefully directed their infringing activities at the State of Florida and throughout the United States.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and/or 1400(b) because, on information and belief, Defendants maintain a principal place of business in this District and/or are registered to do business in the State of Florida, and because Defendants have committed acts of infringement in this District, including the selling, advertising, promoting, offering for sale, distributing, importing, and/or facilitating and/or encouraging sales, advertising, promotion, importation, and/or distribution of the Accused Products in or into this District through their Zendrop platform and direct those activities to customers within this District. Upon information and belief, a substantial part of the events giving rise to Plaintiff's patent, copyright, trademark, trade dress, false designation of origin, and unfair competition claims occurred in this District.

## FACTS AND BACKGROUND

### A. Plaintiff's Intellectual Property Rights

11. Plaintiff is the owner of all right, title, and interest in and to U.S. Patent Nos. 9,510,969 (the "'969 Patent"), 10,556,095 (the "'095 Patent"), and 10,675,174 (the "'174 Patent") (collectively, the "Asserted Patents"). True and correct copies of the Asserted Patents are attached as **Exhibits 1-3**.

4

12.     The '969 Patent issued on December 6, 2016; the '095 Patent issued on February 11, 2020; and the '174 Patent issued on June 9, 2020. *See* Exs. 1-3.

13.     The Asserted Patents were and are valid and enforceable at all times relevant to this action and are entitled to a presumption of validity under 35 U.S.C. § 282.

14.     The '174 Patent is directed to a breathing system adapted to open a nasal passage. A representative picture of Plaintiff's magnetic nasal dilator system embodying the Asserted Patents, including the '174 Patent, is shown below:



15.     The '095 and '969 Patents are directed to nasal adhesives that attach to the user's nose and interact and cooperate with a breathing system apparatus.  A representative picture of Plaintiff's nasal adhesive product embodying the '095 and '969 Patents is shown below:



16.     Plaintiff's patented nasal adhesives are used as part of Plaintiff's innovative nasal dilator system, which includes at least the nasal adhesives, a magnetic band, and an applicator to apply the nasal adhesives.

17.     The patented nasal dilator technology in the Asserted Patents was invented by James D. Castillo, a prolific inventor and motorsports enthusiast who holds multiple patents across various fields. The idea for the nasal dilator system was first conceived during a motorcycle excursion. While wearing goggles, Mr. Castillo experienced discomfort and difficulty breathing due to the pressure on his nose.  This experience prompted him to improvise a device that would keep the nostrils open—even under pressure—leading to the initial development of the technology.

18.     The concept resurfaced during a family gathering, where Mr. Castillo realized that this innovation could have a broader application for athletes of all kinds and for people struggling with nasal breathing in everyday life. What started as a solution for a breathing problem in motor-sports evolved into a novel and widely useful device. That idea became a reality through years of design, development, and refinement, ultimately resulting in the patented technology at issue in this case.

19.     Plaintiff's product line embodying the Asserted Patents and displaying Plaintiff's

distinctive trade dress under the brand name "Intake®" ("Plaintiff's Products") are sold exclusively under the Intake brand by Plaintiff and its distributor, including through Intake's website (www.intakebreathing.com) and by Plaintiff on e-commerce platforms such as Amazon.com and TikTok.

20.     Plaintiff's Products have been hugely successful and after being used and worn by many professional athletes, including in televised interviews, Plaintiff's Products went viral on social media, including on TikTok.

21.     Plaintiff has developed and owns common law trade dress rights in the distinctive overall commercial image and appearance of its nasal dilatory products, including its nasal dilatory system as a whole as well as the magnetic nasal band (marketed as the "Relief Band"), magnetic applicator, and nasal adhesive tabs which make up the system's components parts, all of which are pictured below:

 

 

22. Each of these product components and products constitutes a separate and independently protectable trade dress.

23. The Relief Band trade dress consists of the total image and overall appearance of Intake's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of these elements.

24. The Relief Band trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

25. In the minds of consumers, the Relief Band trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the Relief Band trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the Relief Band trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer

8

reviews recognizing the distinctive appearance of the Relief Band; and (e) consumer association of the Relief Band trade dress with Intake as the source of the product.

26. The Relief Band trade dress is non-functional.

27. Alternative designs exist that would permit competitors to manufacture rigid, magnetic, nasal bands without copying the distinctive overall appearance of Intake's Relief Band.

28. The magnetic applicator trade dress consists of the total image and overall appearance of Intake's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Intake's travel case; and the overall visual impression created by the combination of these elements.

29. The magnetic applicator trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

30. In the minds of consumers, the magnetic applicator trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the magnetic applicator trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the magnetic applicator trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the magnetic applicator; and (e) consumer association of the magnetic applicator trade dress with Intake as the source of the product.

31. The magnetic applicator trade dress is non-functional.

32. Alternative designs exist that would permit competitors to manufacture applicator

devices without copying the distinctive overall appearance of Intake's magnetic applicator.

33. The nasal adhesive tab trade dress consists of the total image and overall appearance of Intake's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

34. The nasal adhesive tab trade dress has acquired secondary meaning and distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019. In the minds of consumers, the nasal adhesive tab trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the nasal adhesive tab trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the nasal adhesive tab trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the nasal adhesive tabs; and (e) consumer association of the nasal adhesive tab trade dress with Intake as the source of the product.

35. The nasal adhesive tab trade dress is non-functional.

36. Alternative designs exist that would permit competitors to manufacture nasal adhesive tabs without copying the distinctive overall appearance of Intake's nasal adhesive tabs.

37. In addition to the independently protectable trade dress of each component, Intake also owns common law trade dress rights in the overall presentation of its integrated nasal dilator system, including the distinctive packaging and unified product offering.

38. The overall product system trade dress has acquired secondary meaning and

distinctiveness through Intake's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019.

39. In the minds of consumers, the overall product system trade dress has come to identify Intake as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Intake's continuous and exclusive use of the overall product system trade dress for approximately seven years; (b) Intake's substantial expenditures on advertising and promotional efforts featuring the overall product system trade dress; (c) Intake's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the overall product system; and (e) consumer association of the overall product system trade dress with Intake as the source of the product.

40. The overall product system trade dress is non-functional.

41. Through Intake's extensive marketing efforts, consistent product presentation, and service to over one million customers, consumers encountering products displaying any of the foregoing trade dress immediately identify such products as originating from Intake.

42. Intake possesses valid and enforceable common law trade dress rights in each of the foregoing trade dress elements.

43. Plaintiff is also the owner of all rights in the copyrights for its images related to its nasal dilator system, including, but not limited to, images of related product components, packaging, and models demonstrating the use of its products.

44. Plaintiff is also the owner of all rights in the copyrights for its images related to its nasal dilator system, including but not limited to images of related product components, packaging, and models demonstrating the use of its products.

11

45.     On January 2, 2025, the Copyright Reg. No. VAu 1-542-204 (the "'204 Registration") entitled "Intake Breathing System" was duly and legally issued by the United States Copyright Office. A copy of the '204 Registration is attached as **Exhibit 4**.

46.     The '204 Registration covers a group of Plaintiff's copyrighted photographs of its nasal dilator system, models demonstrating the use of the system, and product packaging associated with the system, including for example the registered images below:

 



47.     Plaintiff's copyrighted images also include photographs with models displaying how to wear and use the nasal dilator system, such as the registered photographs below:






48.     Plaintiff also holds all right, title, and interest in and to U.S. Trademark Reg. No. 5,752,925 (the "'925 Registration") for the mark INTAKE in standard characters (the "INTAKE Mark"), a true and correct copy of which is attached as **Exhibit 5**.

49.     The '925 Registration was duly and lawfully issued by the United States Patent and Trademark Office on May 14, 2019, for the INTAKE Mark in international class 10 in connection with nasal dilation devices. (*See* Ex. 5.)

50.     On November 21, 2019, the '925 Registration was duly and legally assigned to Plaintiff.

51.     The '925 Registration is valid and subsisting, and is *prima facie* evidence of Plaintiff's exclusive right to use the INTAKE Mark in commerce in connection with the goods listed in the Registration, along with any related goods. (*See* Ex. 5.) The '925 Registration is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b), as Intake filed the required Section 15 affidavit on June 14, 2024.

52.     The INTAKE Mark has been in use in the United States in connection with nasal dilation devices since at least as early as December 3, 2018.

53.     Plaintiff also holds all right, title, and interest in and to U.S. Trademark Reg. No. 5,851,133 (the "'133 Registration") for Intake's Hexagon logo, a true and correct copy of which is attached as **Exhibit 6**:



54.     The '133 Registration was duly and lawfully issued by the United States Patent and Trademark Office on September 3, 2019, for Intake's Hexagon logo in international class 10 in connection with nasal dilation devices. (*See* Ex. 6.)

55.     The '133 Registration is valid and subsisting, and is prima facie evidence of Plaintiff's exclusive right to use the Hexagon logo in connection with the goods listed in the Registration, along with any related goods. The '133 Registration is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b), as Intake filed the required Section 15 affidavit on November 27, 2024.

56.     The Hexagon logo has been in use in the United States in connection with nasal dilation devices since at least as early as December 3, 2018.

57.     Defendants are not licensed under the Asserted Patents or any other Intake patents and are not authorized to practice the inventions claimed therein.

58.     Defendants are not authorized to use, copy, or mimic Plaintiff's trademarks or trade dresses, nor any confusingly similar variation thereof.

59.     Defendants are not authorized to use, reproduce, copy, display, or distribute Plaintiff's copyrighted images of Plaintiff's Products, packaging, and models demonstrating the use of Plaintiff's Products, nor any derivative thereof.

**B.     Defendants' Unlawful Conduct**

60.     Defendants operate an e-commerce dropshipping platform known as "Zendrop," through which they advertise, promote, offer for sale, sell, distribute, import, and/or facilitate and/or encourage sales, advertising, promotion, importation and/or distribution, by and through third-party sellers, the Accused Products.  Through their platform, Defendants source products—including infringing magnetic nasal dilator products—and make them available for third-party sellers to sell through their own online stores for sale to end consumers.

61.     The viral success of Plaintiff's Products has resulted in significant and exponential infringement of Plaintiff's patents and other intellectual property. Due to the growing popularity and demand for Plaintiff's highly-effective and high-quality patented nasal dilator technology, opportunistic sellers—including Defendants—have entered the market with infringing products that attempt to mimic Plaintiff's Products and that infringe on its patents, copyrights, trademarks, and trade dress. Because of this ongoing infringement, Plaintiff is currently losing sales in at least the five-figure range on a monthly basis, severely affecting its ability to capitalize on its own innovation and recover its investment in product development and marketing.

62.     Defendants have previously and are currently selling, advertising, promoting, offering for sale, distributing, importing, and/or facilitating and/or encouraging sales, advertising, promotion, importation, and/or distribution of infringing magnetic nasal dilator products, systems, and component parts that imitate Plaintiff's genuine products, infringe the Asserted Patents, infringe Plaintiff's copyrights, and infringe on Plaintiff's trademarks and trade dress.  Defendants

16

have previously offered and are currently offering the Accused Products on their platform, at a minimum, at the following URLs:

- https://app.zendrop.com/product/1963692;
- https://app.zendrop.com/product/1991076;
- https://app.zendrop.com/product/3041971;
- https://app.zendrop.com/product/1989463;
- https://app.zendrop.com/product/1995298;
- https://app.zendrop.com/product/3167437;
- https://app.zendrop.com/product/1963101;
- https://app.zendrop.com/product/2024111;
- https://app.zendrop.com/product/3187435;
- https://app.zendrop.com/product/2601519;
- https://app.zendrop.com/product/1963401;
- https://app.zendrop.com/product/1950038;
- https://app.zendrop.com/product/1958500;
- https://app.zendrop.com/product/1963762;
- https://app.zendrop.com/product/1972043;
- https://app.zendrop.com/product/1974609;
- https://app.zendrop.com/product/2008790;
- https://app.zendrop.com/product/2038008;
- https://app.zendrop.com/product/2075867; and
- https://app.zendrop.com/product/1963552.

63. Representative webcaptures of the Accused Products as listed and advertised on Defendants' Zendrop platform are reproduced below and attached hereto as **Exhibit 7**. These

webcaptures and comparisons are taken from the Zendrop platform listings identified above and

from Plaintiff's prior Cease and Desist correspondence with Defendants:



64.     The Accused Products meet multiple claims of the Asserted Patents.

65.     Publicly available materials, including the products themselves and Defendants'

advertising on its platform, confirm that the Accused Products practice the claimed elements of

the Asserted Patents.

66.     Specifically, Plaintiff's claim charts show that the Accused Products infringe at least claim 1 of the '174 Patent, claim 1 of the '095 Patent, and claim 1 of the '969 Patent. The representative claim charts are attached as **Exhibits 8-10**.

67.     The unauthorized making, advertising, promoting, offering for sale, selling, distributing, and/or importing into the United States of the Accused Products constitutes direct infringement under 35 U.S.C. § 271(a).

68.     The unauthorized facilitating, contributing to, and/or encouraging making, using, selling, advertising, promoting, and/or importing of the Accused Products constitutes indirect infringement, including inducement of infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c).

69.     Defendants have had notice of the Asserted Patents and that the Accused Products infringe the Asserted Patents since at least June 9, 2026, when Plaintiff delivered a formal Cease and Desist letter to Defendants identifying the Asserted Patents, the infringing products, and specific infringing listings on Defendants' platform and when Plaintiff followed up in email exchanges with a representative of Defendants' multiple times.

70.     On information and belief, Defendants are willfully infringing Plaintiff's patents and knowingly facilitating and inducing infringement by third-party sellers who use Defendants' platform to import, advertise, offer for sale, and/or sell the Accused Products without Plaintiff's authorization.  Despite having received Plaintiff's June 9, 2026 letter and follow-up email correspondences, where Defendant agreed to remove the infringing listings multiple times, and despite having represented on multiple occasions that the infringing listings had been removed, Defendants have continued to maintain active listings for the Accused Products on their platform.

71.     In email correspondence following the Cease and Desist letter, Defendants' representative, Shawn Silvester Santos, acknowledged receipt of the Cease and Desist letter, stated

that Defendants had "taken action to remove the specific product links" and had "proactively removed all other identified listings distributing infringing magnetic nasal strip products," and further represented that the listings were "completely inactive" and "hard-blocked" in Defendants' system such that "[n]o users are allowed to import, list, or sell these items on their stores." Despite these representations, the infringing listings remain active and accessible on Defendants' platform. Plaintiff's Director of Brand Protection confirmed for Mr. Santos on June 11, 2026 that infringing products could still be added to a test store from Defendants' platform.

72.    Defendants' platform also displays and distributes Plaintiff's copyrighted images, website content, product listing images, and marketing materials without authorization, including images protected by at least Copyright Registration Number VAu 1-542-204. Defendants' unauthorized reproduction, display, and distribution of Plaintiff's copyrighted materials constitutes willful copyright infringement under 17 U.S.C. § 501.

73.    In particular, Defendants advertise the Accused Products using images that infringe on Plaintiff's copyrighted images, including at least the images below, exactly and/or as infringing derivative works:

| Defendants' Infringing Image | Plaintiff's Copyrighted Image |
|:---:|:---:|



| Defendants' Infringing Image | Plaintiff's Copyrighted Image |
|---|---|



| Defendants' Infringing Image | Plaintiff's Copyrighted Image |
|---|---|
|  | |

74.     Defendants' products also imitate Plaintiff's trade dress in its nasal dilator system and component parts, creating a likelihood that consumers will be confused into believing Defendants' products are offered by Plaintiff or otherwise associated or affiliated with Plaintiff.

75.     The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts, including because the Accused Products use the total image and overall appearance of Plaintiff's magnetic nasal band, including at least its signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of those elements.

76.     The Accused Products also convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts because the Accused Products use the specific aesthetic shape, contours, and configuration of Plaintiff's applicator, as well as the color and ornamental surface finish and the overall visual impression created by the combination of these elements.

77. The Accused Products also convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts because the Accused Products use images of and are nasal adhesive tabs that use the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

78. For example, a comparison of the Accused Products available on Defendants' Zendrop platform with Plaintiff's genuine products demonstrates Defendants' infringement of Plaintiff's trade dress in the overall commercial image and appearance of Plaintiff's nasal adhesive tab products:

| Defendants' Infringing Products | Plaintiff's Genuine Products |
|---|---|



79.    On information and belief, in a deliberate effort to benefit from Plaintiff's reputation and trade on the valuable common law rights, goodwill, and consumer trust and recognition established by Plaintiff's trade dress, Defendant has blatantly infringed the same with

its ornamental design of the Accused Products as well as by advertising the Accused Products using images of products that use Plaintiff's trade dress.

80.    Defendants have used, and continue to use, without authorization, the INTAKE Mark, including but not limited to uses in advertising such as in their product photos, as depicted below:



*See* https://app.zendrop.com/product/1963762.

81.    Defendants have used, and continue to use, without authorization, the Intake Hexagon logo, including but not limited to uses in advertising such as in their product photos, as depicted below:

26



*See* https://app.zendrop.com/product/2601519 (annotation added).

82. The Accused Products are identical and/or legally identical to Plaintiff's Products because, inter alia, they are nasal adhesive tabs configured for use with Plaintiff's magnetic nasal dilation system.

83. The channels of trade used by Plaintiff and Defendants are the same and, at a minimum, overlapping. For example, both Plaintiff and the third-party sellers using Defendants' platform offer nasal dilator products on publicly-available e-commerce webpages. Defendants' platform sources and facilitates the advertising and sale of products to sellers who then sell them on platforms including Shopify, TikTok, and other e-commerce channels where Plaintiff also sells its products.

84. Defendants are not authorized to use any of Plaintiff's intellectual property, including Plaintiff's patents, trademarks, trade dress, and copyrights.

85. All conditions precedent to this action have been performed, have occurred, or have been waived.

86. Plaintiff has retained Quarles & Brady LLP to represent it in this action and is obligated to pay them a reasonable fee for their services.

## COUNT I

### PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '174 PATENT

87.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86 as if separately repeated herein.

88.     Plaintiff is the exclusive owner of all rights, title, and interest in and to the '174 Patent, titled "Breathing System," duly and legally issued by the United States Patent and Trademark Office on June 9, 2020, including the right to bring this suit for injunctive relief and damages.  *See* Ex. 1.

89.     The '174 Patent is valid and enforceable.

90.     Defendants directly infringe, whether literally or under the doctrine of equivalents, one or more claims of the '174 Patent, including at least representative claim 1 of the '174 Patent, by making, using, offering for sale, selling, advertising, promoting, and/or importing the Accused Products in violation of 35 U.S.C. § 271(a).

91.     The Accused Products satisfy all claim limitations of at least one claim of the '174 Patent. *See* Ex. 8 (comparing representative claim 1 of the '174 Patent to a representative sample of the Accused Products). This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

92.     By making, using, advertising, promoting, offering for sale, selling, and/or importing into the United States the Accused Products, Defendants have injured and irreparably harmed Plaintiff and are liable for direct infringement of the '174 Patent pursuant to 35 U.S.C. § 271(a).

93.     Defendants have had actual knowledge of the Asserted Patents and that the Accused Products infringe the '174 Patent since at least June 9, 2026, when Plaintiff delivered a formal Cease and Desist letter to Defendants.

94.     Defendants have profited from their infringement of the '174 Patent.

95.     Defendants have also induced infringement of the '174 Patent by third parties in violation of 35 U.S.C. § 271(b).  Defendants act with knowledge of the '174 Patent and knowledge of or willful blindness to the fact that its actions will induce third party sellers to infringe the '174 Patent.  Defendants induce infringement by, for example, encouraging and facilitating others to practice the '174 Patent's inventions with the intent that those performing the acts infringe the '174 Patent. For example, Defendants advertise the Accused Products on their platform, promote offering the Accused Products for sale along with infringement marketing materials to do, source the Accused Products from outside the United States to be imported, advertised, and/or sold by third parties,  make the Accused Products available to third-party sellers' online stores, provide the means and instrumentalities for third-party sellers to offer for sale and sell the Accused Products to consumers in the United States, providing tools, tutorials, and support for third-party sellers to list, market, and sell the Accused Products, and/or otherwise encourage and facilitate such use, making, advertising, selling, and/or importing of the Accused Products by third parties.

96.     Defendants intended to induce infringement of the '174 Patent and took affirmative steps to do so.

97.     Defendants had actual knowledge of the '174 Patent and that the Accused Products infringe the '174 Patent no later than their receipt of Plaintiff's demand letter notifying Defendants of their infringement.  Despite such knowledge, Defendants continued to actively induce third-party sellers to infringe the '174 Patent.

29

98.     Defendants also contributorily infringed the '174 Patent in violation of 35 U.S.C. § 271(c).  Defendants know that the listings it encourages third parties to use to advertise and sell the Accused Products and the Accused Products and its component parts that it provides to third party storefronts are especially made or adapted for use in infringing the '174 Patent and are not staple articles of commerce suitable for substantial noninfringing use, and the infringing Products and listings are a material part of the invention of the '174 Patent.

99.     The tools, listings, materials, and products that Defendants provide to third party sellers contribute to the direct infringement of the '174 Patent by those third party sellers.

100.    Defendants' induced infringement and contributory infringement of the '174 Patent have been and continue to be willful.  Defendants had actual knowledge of the '174 Patent and that the Accused Products infringe the '174 Patent, yet Defendants deliberately continued their inducing and contributory activities.  Defendants' willful infringement entitles Plaintiff to enhanced damages up to three times the amount of damages assessed, pursuant to 35 U.S.C. § 284.

101.    Defendants are not licensed or otherwise authorized by Plaintiff to practice, contributorily practice, and/or induce others to practice the claims of the '174 Patent.

102.    As a direct and proximate cause of Defendants' infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled to monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendants' infringing activities are immediately enjoined.

103.    Defendants' making, using, advertising, promotion, offering for sale, and/or importation into the United States of the Accused Products since at least after June 9, 2026 constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

104.   Defendants' continuing acts of direct and indirect infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendants' continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

105.   Defendants' infringement of the '174 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

### PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '095 PATENT

106.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86 as if separately repeated herein.

107.   Plaintiff is the exclusive owner of all rights, title, and interest in and to the '095 Patent, titled "Google Breathing Set," duly and legally issued by the United States Patent and Trademark Office on February 11, 2020, including the right to bring this suit for injunctive relief and damages.  *See* Ex. 2.

108.   The '095 Patent is valid and enforceable.

109.   Defendants directly infringe, whether literally or under the doctrine of equivalents, one or more claims of the '095 Patent, including at least representative claim 1 of the '095 Patent, by making, using, offering for sale, selling, advertising, promoting, and/or importing the Accused Products in violation of 35 U.S.C. § 271(a).

110.   The Accused Products satisfy all claim limitations of at least one claim of the '095 Patent. *See* Ex. 9 (comparing representative claim 1 of the '095 Patent to a representative sample of the Accused Products). This showing of infringement is based on publicly available information,

31

and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

111.    By making, using, advertising, promoting, offering for sale, selling, and/or importing into the United States the Accused Products, Defendants have injured and irreparably harmed Plaintiff and are liable for direct infringement of the '095 Patent pursuant to 35 U.S.C. § 271(a).

112.    Defendants have had actual knowledge of the Asserted Patents and that the Accused Products infringe the '095 Patent since at least June 9, 2026, when Plaintiff delivered a formal Cease and Desist letter to Defendants.

113.    Defendants have profited from their infringement of the '095 Patent.

114.    Defendants have also induced infringement of the '095 Patent by third parties in violation of 35 U.S.C. § 271(b).  Defendants act with knowledge of the '095 Patent and knowledge of or will blindness to the fact that its actions will induce third party sellers to infringe the '095 Patent. Defendants induce infringement by, for example, encouraging and facilitating others to practice the '095 Patent's inventions with the intent that those performing the acts infringe the '095 Patent. For example, Defendants advertise the Accused Products on their platform, promote offering the Accused Products for sale along with infringement marketing materials to do, source the Accused Products from outside the United States to be imported, advertised, and/or sold by third parties, make the Accused Products available to third-party sellers' online stores, provide the means and instrumentalities for third-party sellers to offer for sale and sell the Accused Products to consumers in the United States, providing tools, tutorials, and support for third-party sellers to list, market, and sell the Accused Products, and/or otherwise encourage and facilitate such use, making, advertising, selling,  and/or importing of the Accused Products by third parties.

115. Defendants intended to induce infringement of the '095 Patent and took affirmative steps to do so.

116. Defendants had actual knowledge of the '095 Patent and that the Accused Products infringe the '095 Patent no later than their receipt of Plaintiff's demand letter notifying Defendants of their infringement. Despite such knowledge, Defendants continued to actively induce third-party sellers to infringe the '095 Patent.

117. Defendants also contributorily infringed the '095 Patent in violation of 35 U.S.C. § 271(c). Defendants know that the listings it encourages third parties to use to advertise and sell the Accused Products and the Accused Products and its component parts that it provides to third party storefronts are especially made or adapted for use in infringing the '095 Patent and are not staple articles of commerce suitable for substantial noninfringing use, and the infringing Products and listings are a material part of the invention of the '095 Patent.

118. The tools, listings, materials, and products that Defendants provide to third party sellers contribute to the direct infringement of the '095 Patent by those third party sellers.

119. Defendants' induced infringement and contributory infringement of the '095 Patent have been and continue to be willful. Defendants had actual knowledge of the '095 Patent and that the Accused Products infringe the '095 Patent, yet Defendants deliberately continued their inducing and contributory activities. Defendants' willful infringement entitles Plaintiff to enhanced damages up to three times the amount of damages assessed, pursuant to 35 U.S.C. § 284.

120. Defendants are not licensed or otherwise authorized by Plaintiff to practice, contributorily practice, and/or induce others to practice the claims of the '095 Patent.

121. As a direct and proximate cause of Defendants' infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled to monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate

to compensate for Defendants' infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendants' infringing activities are immediately enjoined.

122. Defendants' making, using, advertising, promotion, offering for sale, and/or importation into the United States of the Accused Products since at least after June 9, 2026 constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

123. Defendants' continuing acts of direct and indirect infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendants' continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

124. Defendants' infringement of the '095 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III

### PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '969 PATENT

125. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86 as if separately repeated herein.

126. Plaintiff is the exclusive owner of all rights, title, and interest in and to the '969 Patent, titled "Nasal Element For A Breathing System," duly and legally issued by the United States Patent and Trademark Office on December 6, 2016, including the right to bring this suit for injunctive relief and damages. *See* Ex. 3.

127. The '969 Patent is valid and enforceable.

128. Defendants directly infringe, whether literally or under the doctrine of equivalents, one or more claims of the '969 Patent, including at least representative claim 1 of the '969 Patent,

34

by making, using, offering for sale, selling, advertising, promoting, and/or importing the Accused Products in violation of 35 U.S.C. § 271(a).

129. The Accused Products satisfy all claim limitations of at least one claim of the '969 Patent. *See* Ex. 10 (comparing representative claim 1 of the '969 Patent to a representative sample of the Accused Products). This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

130. By making, using, advertising, promoting, offering for sale, selling, and/or importing into the United States the Accused Products, Defendants have injured and irreparably harmed Plaintiff and are liable for direct infringement of the '969 Patent pursuant to 35 U.S.C. § 271(a).

131. Defendants have had actual knowledge of the Asserted Patents and that the Accused Products infringe the '969 Patent since at least June 9, 2026, when Plaintiff delivered a formal Cease and Desist letter to Defendants.

132. Defendants have profited from their infringement of the '969 Patent.

133. Defendants have also induced infringement of the '969 Patent by third parties in violation of 35 U.S.C. § 271(b). Defendants act with knowledge of the '969 Patent and knowledge of or willful blindness to the fact that its actions will induce third party sellers to infringe the '969 Patent. Defendants induce infringement by, for example, encouraging and facilitating others to practice the ' 969 Patent's inventions with the intent that those performing the acts infringe the '969 Patent. For example, Defendants advertise the Accused Products on their platform, promote offering the Accused Products for sale along with infringement marketing materials to do, source the Accused Products from outside the United States to be imported, advertised, and/or sold by third parties, make the Accused Products available to third-party sellers' online stores, provide the

means and instrumentalities for third-party sellers to offer for sale and sell the Accused Products to consumers in the United States, providing tools, tutorials, and support for third-party sellers to list, market, and sell the Accused Products, and/or otherwise encourage and facilitate such use, making, advertising, selling, and/or importing of the Accused Products by third parties.

134. Defendants intended to induce infringement of the '969 Patent and took affirmative steps to do so.

135. Defendants had actual knowledge of the '969 Patent and that the Accused Products infringe the '969 Patent no later than their receipt of Plaintiff's demand letter notifying Defendants of their infringement.  Despite such knowledge, Defendants continued to actively induce third-party sellers to infringe the '969 Patent.

136. Defendants also contributorily infringed the '969 Patent in violation of 35 U.S.C. § 271(c).  Defendants know that the listings it encourages third parties to use to advertise and sell the Accused Products and the Accused Products and its component parts that it provides to third party storefronts are especially made or adapted for use in infringing the '969 Patent and are not staple articles of commerce suitable for substantial noninfringing use, and the infringing Products and listings are a material part of the invention of the '969 Patent.

137. The tools, listings, materials, and products that Defendants provide to third party sellers contribute to the direct infringement of the '969 Patent by those third party sellers.

138. Defendants' induced infringement and contributory infringement of the '969 Patent have been and continue to be willful.  Defendants had actual knowledge of the '969 Patent and that the Accused Products infringe the '969 Patent, yet Defendants deliberately continued their inducing and contributory activities. Defendants' willful infringement entitles Plaintiff to enhanced damages up to three times the amount of damages assessed, pursuant to 35 U.S.C. § 284.

139. Defendants are not licensed or otherwise authorized by Plaintiff to practice, contributorily practice, and/or induce others to practice the claims of the '969 Patent.

140. As a direct and proximate cause of Defendants' infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled to monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendants' infringing activities are immediately enjoined.

141. Defendants' making, using, advertising, promotion, offering for sale, and/or importation into the United States of the Accused Products since at least after June 9, 2026 constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

142. Defendants' continuing acts of direct and indirect infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendants' continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

143. Defendants' infringement of the '969 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT IV

### COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

144. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86 as if separately repeated herein.

145. Plaintiff is the sole owner of valid copyrights in its images, videos, websites, marketing materials, and other works covering images of Plaintiff's nasal dilator system, its

packaging, and models demonstrating how to wear and use the system, including but not limited to the photographs registered in the '204 Registration.

146.    Defendants have copied, reproduced, displayed, distributed, modified, used, and/or created derivative works of Plaintiff's copyrighted materials without authorization, including for example by displaying and distributing Plaintiff's copyrighted images, website content, product listing images, and marketing materials on its Zendrop platform in connection with the advertising, promotion, and sale of the Accused Products.

147.    Defendants' unauthorized copying, reproduction, display, distribution, modification, use, and/or creation of derivative works of Plaintiff's copyrighted materials constitutes copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

148.    Defendants' copyright infringement has been willful and intentional.  Defendants knew or should have known of Plaintiff's rights in the copyrighted images since Defendants' first infringing conduct and has willfully and intentionally infringed Plaintiff's exclusive rights in the copyrighted images under 17 U.S.C. § 106.  Defendants also received actual notice of their infringement of Plaintiff's copyrights on June 9, 2026, through Plaintiff's Cease and Desist letter, and continued to display and distribute Plaintiff's copyrighted materials thereafter.

149.    As a direct and proximate result of Defendants' copyright infringement, Plaintiff has been damaged in an amount to be proven at trial.  Plaintiff is entitled to recover its actual damages and any additional profits of Defendants attributable to the infringement, or in the alternative, statutory damages, pursuant to 17 U.S.C. §§ 504(b) and (c), as well as Plaintiff's costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

150.    Plaintiff Intake has suffered and continues to suffer irreparable injury from Defendant's conduct, and Plaintiff has no adequate remedy at law to protect its rights in its

copyrighted images and to prevent Defendant from continuing its infringement and continuing the resulting injury to Plaintiff.

151.   As a direct and proximate result of the copyright infringement detailed herein, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining and restraining Defendant from infringing its copyrighted images.

## COUNT V

### TRADE DRESS INFRINGEMENT (COMMON LAW)

152.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86 as if separately repeated herein.

153.   Plaintiff owns trade dress rights in its nasal dilator system and each of its component parts.

154.   Plaintiff's trade dress consists of (1) the total image and overall appearance of Plaintiff's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of these elements; (2) the total image and overall appearance of Plaintiff's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Plaintiff's travel case; and the overall visual impression created by the combination of these elements; and (3) the total image and overall appearance of Plaintiff's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these

elements; including each of these sets of features together in Plaintiff's dilator nasal system as well as individually as its component parts.

155. Plaintiff's trade dresses are non-functional and do not yield any utilitarian advantage.

156. Numerous alternative designs are available that would permit competitors to manufacture and sell non-infringing nasal dilation systems, nasal dilator products, applicators, and adhesive tabs without copying Plaintiff's distinctive trade dress. For example, competitors could employ different aesthetic shapes, outlines, contours, curves, configurations, proportions, colors, ornamental surface finishes, ornamental textures, and visual designs that differ from Plaintiff's unique, signature ornamental designs. The availability of these alternative designs demonstrates that Plaintiff's trade dress elements are not competitively necessary and that competitors could effectively compete in the nasal dilator market without imitating Intake's distinctive product appearance.

157. Plaintiff's trade dresses have secondary meaning; and Plaintiff is the originator of the unique design for its nasal dilator system and its component parts.

158. Plaintiff has been advertising and selling its patented nasal dilator system since at least 2019 as a unique and original creation.

159. Defendants' public display, advertising, promoting, offering for sale, and sale of the Accused Products is likely to cause confusion in the marketplace as to the source of the product.

160. Plaintiff's trade dress is strong, unique, and has secondary meaning. Defendants' Accused Products are substantially similar to Plaintiff's trade dress in terms of overall image and appearance—the designs, shape, and overall visual impression are identical.

161. Specifically, the Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts at least

because Defendants' nasal strips use the total image and overall appearance of Plaintiff's magnetic nasal band, including at least its signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of those elements.

162.   The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts at least because Defendants' applicator uses the specific aesthetic shape, contours, and configuration of Plaintiff's applicator, as well as the color and ornamental surface finish, the coordinated visual design with Plaintiff's travel case, and the overall visual impression created by the combination of these elements.

163.   The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal dilator system and each of its component parts at least because Defendants' advertisements use images of nasal tabs that use the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

164.   The Accused Products and Plaintiff's Products are both nasal dilator systems which have been presented to customers in the same channels of trade, namely, via e-commerce. On information and belief, the goods travel in the same marketing channels, including on social media.

165.   Defendants' advertising, promoting, offering for sale, and sale of the Accused Products infringes upon Intake's trade dress in violation of Florida common law.

166.   As a direct and proximate result of Defendants' trade dress infringement, Defendants have caused, are causing, and unless immediately enjoined by this Court, will continue

to cause immediate and irreparable harm to Plaintiff, for which there is no adequate remedy at law, and for which Intake is entitled to injunctive relief.

167.    As a direct and proximate result of Defendants' infringement of Plaintiff's trade dress, Plaintiff has been damaged in an amount to be proven at trial and is entitled to collect damages from Defendants.

## COUNT VI

### TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

168.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86 as if separately repeated herein.

169.    Defendants' actions constitute trademark infringement under 15 U.S.C. § 1114.

170.    Plaintiff holds all right, title, and interest in and to the '925 Registration. The '925 Registration is valid and subsisting and is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b). The '925 Registration is *prima facie* evidence of Plaintiff's exclusive right to use the INTAKE Mark in commerce in connection with the goods listed in the Registration, along with any related goods.

171.    The INTAKE Mark has been continuously used to market and sell nasal dilator systems since at least as early as 2018. The INTAKE Mark is inherently distinctive and has acquired secondary meaning.

172.    Plaintiff holds all right, title, and interest in and to the '133 Registration. The '133 Registration is valid and subsisting and is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b). The '133 Registration is *prima facie* evidence of Plaintiff's exclusive right to use the Hexagon logo in connection with the goods listed in the Registration, along with any related goods.

173. The Hexagon logo has been continuously used to market and sell nasal dilator systems since at least as early as 2018. The Hexagon logo is inherently distinctive and has acquired secondary meaning.

174. Defendants have used, and continue to use, without authorization, the INTAKE Mark and Hexagon logo, including but not limited to uses in advertising such as in their product photos, on packaging, and on the Accused Products.

175. Because of Defendants' unauthorized use of the INTAKE Mark and Hexagon logo, Plaintiff's customers, and consumers in general, are likely to mistakenly believe Defendants' goods originate from and/or are affiliated with Plaintiff.

176. Accordingly, Defendants' use of the INTAKE Mark and Hexagon logo has caused and/or is likely to cause consumers to mistakenly believe Defendants' products originate from, are sponsored by, and/or are affiliated with Intake, constituting trademark infringement.

177. Upon information and belief, Defendants' infringement is intentional, willful, and/or in reckless disregard of Intake's trademark rights in its INTAKE Mark and Hexagon logo.

178. By infringing the INTAKE Mark and Hexagon logo, Defendants have caused Plaintiff to suffer and, unless enjoined by this Court, will cause Plaintiff to continue to suffer substantial injury, including, but not limited to, lost profits, for which Plaintiff is entitled to all available damages to compensate Intake for Defendants' infringement.

179. If Defendants' infringement is not enjoined, Plaintiff will suffer irreparable harm that cannot adequately be compensated by a monetary reward.

## COUNT VII

### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(a)(3))

180. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86 as if separately repeated herein.

181. Defendants' actions constitute false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(3), by using in commerce a false designation of origin and a false or misleading representation of fact which is likely to cause confusion as to the origin, sponsorship, or approval of Defendants' goods in connection with Plaintiff's common law trade dress in its nasal adhesive tabs.

182. Plaintiff owns all right, title, and interest in and to the '925 Registration. The '925 Registration is valid and subsisting and is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b). The '925 Registration is *prima facie* evidence of Intake's exclusive right to use the INTAKE Mark in commerce in connection with the goods listed in the Registration, along with any related goods.

183. Plaintiff owns all right, title, and interest in and to the '133 Registration. The '133 Registration is valid and subsisting and is incontestable under 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b). The '133 Registration is *prima facie* evidence of Plaintiff's exclusive right to use the Hexagon logo in connection with the goods listed in the Registration, along with any related goods.

184. Defendants are not authorized to use the INTAKE Mark, any variation thereof, or any mark confusingly similar to the INTAKE Mark.

185. Defendants are not authorized to use the Hexagon logo, any variation thereof, or any mark confusingly similar to the Hexagon logo.

186. Defendants have used, and continue to use, without authorization, the INTAKE Mark and Hexagon logo, including but not limited to uses in advertising the Accused Products on their website, on packaging, and on the Accused Products.

187. Defendants' use of the INTAKE Mark and Hexagon logo has caused and/or is likely to cause consumers to mistakenly believe Defendants' products originate from, are sponsored by, and/or are affiliated with Intake.

188.   Plaintiff owns trade dress rights in its nasal dilator system and each of its component parts.

189.   Plaintiff's trade dress consists of (1) the total image and overall appearance of Plaintiff's magnetic nasal band, including at least the following distinctive, non-functional, ornamental elements: signature color options, specific aesthetic contours, curves, and proportions of the band, the ornamental finish and texture, and the overall visual impression created by the combination of these elements; (2) the total image and overall appearance of Plaintiff's applicator device, including at least the following distinctive, non-functional, ornamental elements: the specific aesthetic shape, contours, and configuration of the applicator; the color and ornamental surface finish; the coordinated visual design with Plaintiff's travel case; and the overall visual impression created by the combination of these elements; and (3) the total image and overall appearance of Plaintiff's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements; including each of these sets of features together in Plaintiff's dilator nasal system as well as individually as its component parts.

190.   Plaintiff's trade dresses are non-functional and do not yield any utilitarian advantage.

191.   Numerous alternative designs are available that would permit competitors to manufacture and sell non-infringing nasal dilation systems, nasal dilator products, applicators, and adhesive tabs without copying Plaintiff's distinctive trade dress. For example, competitors could employ different aesthetic shapes, outlines, contours, curves, configurations, proportions, colors, ornamental surface finishes, ornamental textures, and visual designs that differ from Plaintiff's

unique, signature ornamental designs. The availability of these alternative designs demonstrates that Plaintiff's trade dress elements are not competitively necessary and that competitors could effectively compete in the nasal dilator market without imitating Intake's distinctive product appearance.

192. Defendants have used, and continue to use, without authorization, a product design that is confusingly similar to Plaintiff's trade dresses to advertise, sell, and offer for sale, and/or facilitate the advertising and sale of products that unfairly compete with Plaintiff's legitimate products in the same channels of trade, including on e-commerce and drop shipping platforms.

193. Defendants' use of product design that is confusingly similar to Plaintiff's trade dresses is likely to cause confusion, mistake, or deception among consumers as to the origin, sponsorship, or approval of Defendants' goods, or as to an affiliation, connection, or association between Defendants and Plaintiff.

194. Defendants' adoption and use of a product design that is confusingly similar to Plaintiff's trade dresses constitutes a false designation of origin and a false or misleading representation of fact in violation of 15 U.S.C. § 1125(a)(3), in that it misrepresents the origin of Defendants' goods and causes consumers to believe they are purchasing products originating from, sponsored by, or affiliated with Plaintiff.

195. Defendants therefore use Plaintiff's INTAKE Mark, Hexagon logo, and trade dress to unfairly compete with Plaintiff and/or redirect sales to Defendants for infringing products that would have otherwise been directed to Plaintiff.

196. Defendants' false designation of origin and unfair competition is intentional, willful, and/or in reckless disregard for Plaintiff's common law trade dress rights in its nasal adhesive tabs.

197.    As a direct and proximate cause of Defendants' false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(3), Defendants have caused Plaintiff to suffer and, unless enjoined by this Court, will cause Plaintiff to continue to suffer substantial injury, including, but not limited to, lost profits, for which Plaintiff is entitled to all available damages to compensate Plaintiff for Defendants' wrongful actions.

198.    If Defendants' false designation of origin and unfair competition in violation of Plaintiff's common law trade dress rights are not enjoined, Plaintiff will suffer irreparable harm that cannot adequately be compensated by a monetary award.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants on the claims set forth above and respectfully requests that this Court:

A.    Enter judgment against Defendants finding that Defendants (i) have directly and indirectly infringed, literally or under the doctrine of equivalents, one or more claims of the Asserted Patents, (ii) have infringed Plaintiff's copyrights, (iii) have infringed Plaintiff's trade dress rights in violation of common law trade dress rights, (iv) have infringed Plaintiff's INTAKE Mark and Hexagon Mark in violation of 15 U.S.C. § 1114; and (v) have committed acts of false designation of origin and unfair competition in violation of Plaintiff's rights;

B.    Enter judgment against Defendants finding that Defendants have willfully directly and indirectly infringed one or more claims of the Asserted Patents, willfully infringed Plaintiff's copyrights, and willfully infringed Plaintiff's common law trade dress rights, willfully infringed Plaintiff's INTAKE Mark and Hexagon Mark, and that Defendants' false designation of origin and unfair competition have also been willful;

47

C.     Temporarily, preliminarily, and permanently enjoin Defendants, their affiliates, officers, agents, employees, assigns, representatives, and all persons acting for, with, by, through, under, or in active concert with Defendants:

1) from making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products that infringe upon the Asserted Patents, including the Accused Products,

2) from inducing other to infringe the Asserted Patents or contributing to others' infringement of the Asserted Patents;

3) from any further acts of copyright infringement;

4) from any further acts of trade dress infringement, including selling or advertising the Accused Products;

5) from any further acts of trademark infringement; and

6) from any further acts of unfair competition;

D.     Award Plaintiff all available and legally permissible damages and relief adequate to compensate Plaintiff for Defendant's patent infringement that occurred pursuant to 35 U.S.C. § 284 to the full extent permitted, an award of Plaintiff's profits from its patent infringement pursuant to 35 U.S.C. § 289, together with prejudgment interest and costs and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285 and all other applicable statutes and rules in common law as may apply;

E.     Award Plaintiff its actual damages resulting from, and any profits that Defendants derived from, Defendants' trademark and trade dress infringement, and for its false designation of origin and unfair competition, including as appropriate pursuant to 15 U.S.C. §§1125 and 1117.

48

F.    Award Plaintiff any profits that Defendant derived from its patent infringement, trade dress infringement, trademark infringement, false designation of origin and unfair competition, including as appropriate pursuant to 15 U.S.C. §§ 1125 and 1117;

G.    Award Plaintiff all additional available and legally permissible damages and relief adequate to compensate Plaintiff for Defendants' trademark and trade dress infringement including corrective advertising damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1125 and 1117;

H.    Award Plaintiff statutory damages in the amount of $150,000 per infringing work for Defendants' copyright infringement in an amount to be determined at trial, pursuant to 17 U.S.C. § 504(c), and Plaintiff's costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

I.    Award Plaintiff its actual damages, direct and indirect, for Defendant's copyright infringement in an amount to be determined at trial, to be increased to the maximum permitted by law, for Defendant's acts of willful infringement;

J.    Award Plaintiff supplemental damages or profits for any prejudgment interest and post-judgment interest, continuing post-verdict infringement up until entry of the final judgment, with an accounting as needed;

K.    Declare Defendants' patent infringement willful and order an enhancement of damages up to three times during the period of willful infringement;

L.    Declare this to be an exceptional case under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys' fees, costs, and expenses incurred in connection with this action under 35 U.S.C. § 285 and all other applicable statutes and rules in common law as may apply;

M.    Award Plaintiff its costs, including attorneys' fees, and an assessment of interest, for Defendant's copyright infringement;

N.      Award Plaintiff its costs and expenses incurred in bringing and prosecuting this action pursuant to 35 U.S.C. § 284, Rule 54(d) of the Federal Rules of Civil Procedure, and all other applicable statutes and rules in the common law as may apply; and

O.      Award Plaintiff any and all other relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues so triable by a jury as of right in this action.

Dated the 18th day of June, 2026.

*/s/ Melanie C. Verdecia*
Melanie C. Verdecia, Esq.
(FL Bar No. 123855)
QUARLES & BRADY LLP
101 East Kennedy Boulevard, Suite 3400
Tampa, Florida 33602
Tel.: (813) 387-0300
melanie.verdecia@quarles.com

Dawn M. David, Esq.
(*pro hac vice* forthcoming)
QUARLES & BRADY LLP
411 E Wisconsin Ave.,
Suite 2400
Milwaukee, WI 53202
Tel.: (414) 277-5000
dawn.david@quarles.com

*Attorneys for Plaintiff Intake Breathing Technology, LLC*